Good morning, Your Honors. I'm Stuart Miller for the appellant. The arguments will be done by Kyle Cabrera and Michael Malacuti, two law graduates from the University of California, Irvine School of Law. Wonderful. Good morning, Your Honors. My name is Kyle Cabrera. My partner is Michael Malacuti. We are supervised by Professor Stuart Miller on behalf of the University of California, Irvine School of Law's Adult Litigation Clinic, and we represent the appellant, Anthony Brown. Today I will be discussing the California court's interpretation of California Code of Civil Procedure, Section 352.1, and my partner will be discussing the defendant's arguments. I'd like to reserve five minutes for rebuttal. The issue in this case is whether an indeterminate sentence of 423 years to life is a sentence of, quote, less than four life under Section 352.1. In 1994, the California legislature enacted Section 352.1, and under that statute, prisoners who were serving terms of, quote, less than four life were given additional time to file civil lawsuits. In 2016, the California Court of Appeal in Brooks v. Mercy Hospital interpreted the phrase for a term of less than four life. In that case, a prisoner serving an indeterminate life sentence with an uncertain release date filed his civil suit past the period of limitations and argued that he was entitled to tolling. The court in Brooks agreed with him and held that prisoners serving indeterminate life sentences are serving terms of less than four life under 352.1 and are thus entitled to tolling. Now, Brooks relied on a previous California Court of Appeal case called Grasso v. McDonough, which interpreted a previous incarnation of the statute with identical language. And in that case, the court held that the only prisoners excluded from tolling were those prisoners serving life without the possibility of parole, or ELWA. Now, importantly, in both- Back in 1968, I think it was, when that case was decided, I take it we didn't have these 450 to years to life type sentences, right? It was something within somebody's natural lifespan to life as an indeterminate sentence, right? So hasn't the world kind of changed in that respect? And so whatever the court said back then doesn't really seem to apply so much to the kinds of sentences that courts are forced to hand down now. Well, with Mary Grasso in that case, her release date was not certain. It was not certain when she was going to be released from prison. And the important part in both the Grasso and the Brooks holding is that they never inquired into whether the prisoner would one day be released from prison. And they actually, in both cases, purposely omitted the length of the prisoner's sentence. As we all know, when appellate courts issue published decisions to be used as precedent, they include all necessary information needed to decide future cases. The fact that the courts in both Brooks and Grasso never inquired into whether the prisoners would one day be released proves that such a fact is irrelevant to a determination of whether a prisoner is entitled to tolling under 352.1. I thought the court's entire rationale there for why a prisoner with a true life without parole sentence should not receive tolling is that there was really no hope that he or she would ever sort of enjoy the fruits of whatever recovery they might obtain. And so therefore, at least the underlying premise seemed to be that, well, as long as you have some hope of getting out within a normal human being's lifetime, then it makes sense for us to toll the statute so that maybe you can pursue your action. Yes. In 1968, there were certain prisoners who could not file civil lawsuits while in prison. Now, Mary Grasso was given the discretion by the Board of Prison Directors to file lawsuits. So when Grasso was referring to those prisoners who may never be released, it was referring to the prisoners who would not be able to file civil lawsuits while in prison. And for those prisoners, their only avenue of relief would be if they were released. However, in 1975, the California legislature has amended Penal Code Section 2601, which was also interpreted and construed by Grasso. And in that penal code, all prisoners now are able to bring civil suits. Anthony Brown is able to bring a civil suit while in prison. He's able to enjoy the fruits of his litigation while in prison. That was another added provision in 2601. In 1975, prisoners are able to own property while in prison. What exactly is a de facto life sentence? How can we tell one when we see one? Well, the de facto life sentence was discussed in People v. Caviero, the California Supreme Court case which dealt with a juvenile non-homicide offender. Just what is it? Give me a definition of it. It would be the functional equivalent of an LWOP sentence, so a sentence in which the prisoner will never be released. That would be, I guess, what a de facto life without parole sentence would be, whereas a de jure life without parole sentence would be one that was explicitly defined as such and required under the sentencing statute. Also required based on the crimes that the prisoner was convicted of. Well, look, I'm 50 years old, and I get a 45-year sentence. Is that a de facto life sentence? Well, that's the issue here. I mean, courts would have to decide that issue every time that a prisoner were to file a lawsuit, and that's not what is required under California law. Brooks and Grasso never mentioned this de facto life without parole sentence. That is only mentioned by the California Supreme Court in another context, in a federal constitutional context that deals with the Eighth Amendment's cruel and unusual punishment clause. This case does not deal with the cruel and unusual punishment clause. This is a case dealing with a state civil procedural tolling statute, which simply requires us to look into when the prisoner needs to file a civil suit by. The de facto de jure life without parole distinction has no relevance to a determination under Section 352.1. Counsel, can I – I'm sorry, if I could just jump in. Are you splitting your opening argument with your colleague? Yes, and if you would like to hear from my opening comment. Yeah, maybe if we could transition because you've eaten into some of his time. So, okay. Go ahead, Judge Boutier. I'm sorry to cut you off. No, yeah, and this is for either counsel. So in the world where we didn't have Grasso or Brooks, I'm just looking at the text of the statute, and it says for a term less than for life, and it's clear from this case that your client will – the term was more than life, so therefore it shouldn't apply. What's the best textual argument to show why, besides Grasso and Brooks, why your client should get tolling here based off of the text? Your Honor, good morning. Michael Malacuti for the appellant. The court in Grasso construed the literal terms under Section 352 in light of changes in the California Penal Code and in light of changes to the sentencing scheme in California. So in a literal sense, the statute precludes prisoners serving anything greater than life. But in light of changes, significant changes, in both California's sentencing scheme and the penal code, the phrase less than for life no longer had any rational purpose. In 1872, prisoners were civilly dead, and so a life sentence was literally a life sentence. But now that's not the case. Prisoners may be paroled, they may be pardoned, they may be released on a compassionate release or the elderly parole program. So the reasons to exclude life termers, valid as they were in 1872, no longer existed when Grasso was decided. And so the court in Brooks established a bright-line rule, which avoids, as Your Honor has pointed out, any kind of inconsistency in determining sentences of prisoners who are similarly situated. The defendants argue that tolling should apply only to prisoners who may actually be released, but this is not what the California law requires. Essentially, courts would have to determine when a prisoner would die. And the California Supreme Court in People v. Contreras has addressed the issue of using actuarial tables and condemned the use of such things. For example, Hispanics statistically live longer than blacks, and females live longer than men. But counsel, in this case, your client received 423 years and parole is 145. So why do we even have to get into that? In this case, it's very clear what's going to happen. Your client will spend the rest of his time in jail. Your Honor, the point is that the inquiry under Section 352.1 is not a factual inquiry. This is a question of law. Brooks decided that a certain class of prisoners, as a matter of law, are entitled to tolling under 352.1. And that prisoners like Brown are included in the class that are entitled to tolling. Whether or not the practical implications of their sentences preclude the possibility of release is irrelevant. The relevant inquiry is whether Brown is sentenced to an indeterminate life sentence. And if he is, then tolling applies. Your Honor, also, the defendants cite to the case People v. Caballero, which is not an indication of how the California Supreme Court would rule on this issue. Why does Brown have an indeterminate life sentence? Help me understand that. He's got a period of years, albeit lots of years. That's correct, Your Honor. In California, under the California Sentencing Scheme, there are determinate sentences, indeterminate sentences, life without parole, and death sentences. And each of these are categorically distinct from one another. The fact that one looks like another does not transform it into a different type of sentence under California Sentencing Scheme. It's relevant in the context of People v. Caballero because People v. Caballero dealt with a 110-year sentence imposed on a child non-homicide offender with respect to the cruel and unusual punishments clause of the Constitution. Children under the Constitution must be treated differently than adults for purposes of sentencing. And so the factual inquiry into the prisoner's sentence is relevant there because the practical implications of the child sentence is relevant under the cruel and unusual punishments clause. But this case is about a state's tolling statute that simply determines when a complaint needs to be filed by. The application of Brooks is very clear and simple. If a prisoner is sentenced to, quote, life without parole, the prisoner gets no tolling. But if the prisoner is sentenced to anything else, tolling applies. And it's important to remember that the Brooks decision was decided four years after People v. Caballero. So the Brooks Court was aware of this de facto de jure life without parole issue, but it made no reference to it. And, in fact, the California Supreme Court can, on its own, depublish published decisions. It can review appellate decisions, but it did not. And it indicates that Brooks remains good law under California law and under California. And for those reasons, Brown's case was timely. Therefore, we ask this court to reverse the lower court's decision and remand for further proceedings. Thank you. Thank you very much. Let's hear from counsel for the committee. Good morning. May I please the court? My name is Melinda Cantrell, and I will be arguing on behalf of the defendants. The parties agree that Mr. Brown will never be released from prison during his natural lifetime. In Austin v. Medicus, the California Court of Appeal stated that Section 352.1 must be construed in context with its predecessor statute, former Section 352, which was enacted in 1872. In 1872, former Section 352 provided for tolling for those prisoners serving a term less than for life, which meant at that time those prisoners who would someday be released. Specifically, as explained by the Court of Appeal in Austin, prisoners in 1872 were stripped of their civil rights during their incarceration, which was a temporary legal disability that prevented them from filing a civil action. However, upon release, those rights would be restored. At the same time, former Code of Civil Procedures Section 674 provided that a person sentenced to life in prison was deemed civilly dead. Accordingly, the legislature in 1872 intended to exclude tolling for those prisoners who would never be released from prison during their natural lifetime, as discussed in Grasso v. McDowell. Otherwise, to toll the statute of limitations indefinitely for those prisoners who are incarcerated for life would be to bestow a sardonic favor upon such prisoners. With these principles in mind, in Grasso, the Court of Appeal applied a practical approach in determining the meaning of the phrase for a term less than life to determine when the statute of limitations should be tolled. In Grasso, decided in 1968, the Court explained that the reasons for excluding life-termers had largely been lost given that many prisoners may now be The plaintiff is exactly one of those such prisoners who can never be released. After Grasso, in 1975, the legislature enacted Penal Code Section 2601, which did provide prisoners the right to file civil lawsuits. Nevertheless, in 1994, the legislature enacted Section 352.1, which still provided for tolling, but which used the identical language as former Section 352 to again limit the tolling provisions to those serving a term for less than life. Can I jump in and just ask you the question that's kind of most on my mind with respect to your position? We have a recent California Court of Appeal decision. Is it from 2016? Is that the one I'm thinking of? Yes. Brooks v. Mercy Hospital. Right. And, you know, our job here, we don't have any expertise in California law. We're just trying to make a predictive judgment about what the California Supreme Court would do. Why shouldn't we just look to Brooks? And I do read Brooks as establishing a categorical rule that opponents have suggested. Why shouldn't we just look to Brooks and say that's the best guess that we have as to what California law provides and go with that? Because in Brooks, the plaintiff was subject to parole. So Brooks was considering and was consistent with Grasso in considering the statute. And the Court of Appeal was not considering a sentence where the plaintiff was going to be in prison for the rest of their life. In fact, in Brooks, the Court of Appeal stated that where there is no possibility of parole during the prisoner's literal lifetime of incarceration, a sentence is not one that is for a term less than life. Here, there is no possibility of parole during the plaintiff's literal lifetime of incarceration. And therefore, Section 352 does not apply to toll his claims under Brooks and under Grasso. And remember, in 2018, the Court of Appeal in Austin versus Medica specifically stated that when trying to interpret and construe the phrase of Section 352.1, we have to go in context and look back to its predecessor statute, 352, to determine the meaning of the phrases. And as explained, in 1872, the statute was only told for those prisoners who would be released in their natural lifetime. So I think that all the Court of Appeal decisions are consistent and that the Brooks merely said Grasso was good law in the way that they looked at the former statute. Now, in Grasso, at that time, the prisoners were not allowed to file suit without permission. However, the 1975 enactment of Penal Code Section 2601 changed that. However, in 1994, in enacting Section 352.1, the legislators specifically used that same language. And respectfully, under California law, when a statute uses the exact same language as its predecessor statute, it's meant to be given the same interpretation and meaning that the legislator intended when it originally enacted that statute. So here, the regular two-year statute limitations should apply to prisoners who will be in prison for life as a matter of public policy. In fact, it was the legislator's intent to limit rather than expand the tolling provisions of Section 352.1 when it enacted it in 1994, as recognized by the Court of Appeal in Austin. Finding the two-year tolling provision does not apply to prisoners who will never be released from prison furthers this intent by the legislator. In fact, in enacting Section 352.1 in 1994, the legislator noted that there was an alarming number of civil suits brought by inmates against state prison employees, and a disproportionate amount of those suits were frivolous. So the legislator declared it was his intent to limit inmates' ability to bring lawsuits when the facts are old and difficult to prove. An inmate who will never be released from prison does not need an extra two years to file his lawsuit as he is not suffering from a temporary legal disability. Also, here, due to the number of years that Mr. Brown is required to serve, his sentence is in practical effect no different than a defendant who has received a sentence of life without the possibility of parole. How is a judge supposed to tell whether a defendant may or may not be released? Yes, Your Honor, Judge Parker. In People v. Caballero, the California Supreme Court in footnote 3 specifically stated that the term life expectancy is defined to mean the normal life expectancy of a healthy person of the defendant's age and gender living in the United States. So if using that guidelines given by the California Supreme Court, if the prisoner's sentence is going to exceed his natural lifetime, then he is serving, in fact, the equivalent of a life sentence without parole. And in People v. Caballero, the California Supreme Court indicated that life LOP sentences and de facto sentences should be treated the same because both sentences require the prisoner to stay in prison for the rest of his natural life. In addition, there are numerous California Court of Appeals cases cited in our briefs which apply the same reasoning and find that LOP sentences and sentences where the parole date exceeds the prisoner's natural lifetime are materially indistinguishable and they are the functional equivalents of each other. In fact, the Ninth Circuit in Moore v. Bider specifically stated that in that case, the prisoner would have to live to be 144 years old, similar to here, in order to be eligible for parole. Therefore, his chance for parole was zero and his sentence was materially indistinguishable from an LOP sentence. Here, it is quite obvious that the plaintiff is never going to be released from prison. Again, for the other types of cases, the California Supreme Court has specifically explained what a life expectancy means. Furthermore, in response to the argument that the courts should not apply the same reasoning as People v. Caballero, the defendants respectfully disagree. There is no reason that the California Court of Appeal would interpret an LOP sentence and its functional equivalent differently here. In fact, quite the opposite, the same analysis would apply because the focus of both Section 352 and Section 352.1 and determining whether a sentence amounts to cruel and unusual punishment for certain juvenile offenders is whether that prisoner will ever be released. Thus, an LOP sentence and a de facto LOP sentence are indistinguishable for the purposes of determining... Let me just bring you back to Brooks and just ask you about this particular passage in that case. The court there was construing what the court had held in Grasso, right, back in 1968. And what the court said is that Grasso construed the prior statute, Section 352, to mean that only those sentenced to life without possibility of parole should be excluded from the tolling provision. And so it was really, that was my earlier question, it's that language that seems to set out a pretty categorical rule, which your opponent says, listen, in California at least, a sentence of life without possibility of parole is kind of a term of art. It's its own distinct category of sentences, and it's indisputable here that Mr. Brown did not get that sort of sentence. So how do you square those two things with your argument? Well, I would say that a sentence where the prisoner is not going to be released in his natural lifetime is, for all intents and purposes, an LOP sentence. And I want to focus on, with respect to the argument that it's a term of art, when the statute was originally enacted, it wasn't. And so the intent of the legislator in originally enacting the same phrase of the statute was whether that prisoner was going to be released or not. And Brooks, again, wasn't deciding this issue. Brooks was, the plaintiff in Brooks was entitled to parole. So I would say that it didn't consider whether, where a sentence, I'm sorry, where a prisoner was never going to be released in his natural lifetime, which is a category that fell under in terms of whether that prisoner should be entitled to tolling. So they didn't consider that, but we have the California Supreme Court's reasoning in Caballero, and we have the Austin case emphasizing that we look at the legislator's intent in originally enacting the statute to interpret its meaning. Because there was no parole, life with or without parole, at the time the statute was originally enacted in 1872, it wouldn't make sense to say that that's how we're going to decide the difference between those statutes now. So I would respectfully submit that this is an issue that has to be determined. And based on the guidance from the California Supreme Court and appellate courts, there is really no difference when you're looking at whether the plaintiff will be released or not between an LLP sentence and a sentence that's going to exceed the defendant's natural lifetime, which is what we're supposed to look at here in considering Section 352.1 and its predecessor statute, Section 352. So, unless there's any other questions, I will submit on the argument. Okay, thank you very much. We appreciate your arguments. Let's put four minutes on the clock for rebuttal, please. Okay, yes, you've kept track. No, no. Okay, let's put four. That's fine. You were ahead of me. Very good. Mr. Cabrera, you can proceed. Your Honors, I'd like to address three points raised by defense counsel. The first point goes to the Brooks case in 2016. We do argue that Brooks established a categorical rule that only those serving LWOP are excluded from tolling. I would point not only to language that you pointed out, Judge Watford, but also the language in Brooks that says that the term less than for life is not to be read literally. This language also appears in Grasso. Importantly, again, the court in Brooks and the court in Grasso never inquired into whether the prisoner would be released and never inquired into the length of the prisoner's sentence. Again, this relates to Judge Parker's question earlier, and it is why Brown was sentenced to an indeterminate life sentence. That was the question you posed to Mr. Malakouti. It's important to understand that in California, Brown could not have been sentenced to an LWOP sentence. The crimes of which he was convicted and the sentencing statute under which he was sentenced do not give the sentencing judge discretion to sentence Brown. The sentencing judge in Brown's case had to sentence Brown to an indeterminate life sentence with the possibility of parole. That is mandated under California law, and so that is the reason why he was sentenced to an indeterminate life sentence. That is why he is on a separate statutory track than prisoners who are on the statutory track of LWOP. And this makes sense in California because in California, as the California Supreme Court has said, the state has essentially given up on prisoners who are serving LWOP. They are denied certain benefits that other prisoners freely enjoy. The third point that I would like to make with defense counsel's argument is people be caviaro. In that case, she points out that the court looks to whether the prisoner will ever get out of prison in their natural lifetime. And she does point out that she, in their brief, they listed a lot of cases citing caviaro. The one case that was not cited, though, was People v. Contreras. And People v. Contreras is a California Supreme Court case reacting to caviaro in which the Supreme Court has abandoned the life expectancy standard. They no longer look into the lifetime of the prisoner, the average lifetime of the prisoner, because they have found that such an analysis would violate equal protection based on the fact that actuarial tables give different lifespans based on gender, race, and the like. The California Supreme Court categorically rejects such an approach. They no longer look into that to determine whether the prisoner will be released. In fact, under caviaro, now courts simply look to whether the prisoner is given a meaningful opportunity to obtain a release. And this is based on the fact that the Eighth Amendment's Cruel and Unusual Punishment Clause mandates this for juveniles, for children, who are constitutionally different from adults. The cases could not be more distinguishable. In caviaro, we dealt with an Eighth Amendment constitutional issue dealing with the Cruel and Unusual Punishment Clause. Here, we are dealing with a state civil procedural tolling statute that simply requires us to look into when the prisoner needs to file a complaint. Again, in California, there's a bright line rule. Prisoners serving LWOP are not entitled to tolling. All other prisoners get additional two years to file their civil lawsuits. Brown is not sentenced to LWOP. He could not have been sentenced to LWOP under California law. The sentencing judge, in his case, had no discretion to do so. Brown is serving an indeterminate life sentence, just like the prisoner in Brooks, just like the prisoner in Grasso, and just like the prisoner in Martinez v. Gomez. This court's case similarly applied Brooks and Grasso's clear, bright line rule. Because Brown is not serving a sentence of LWOP, he is entitled to tolling under Section 352.1. Thank you. Okay, thank you very much. Thank you, Paul. Yes, well, let me extend a special thanks to Mr. Cabrera and Mr. Malakouti for your willingness to take this case on pro bono. Our thanks to Mr. Miller for supervising. I guess you guys are no longer technically students, it sounds like, but you've discharged your responsibilities as counsel just in a tremendous fashion. We are very grateful for your assistance with our case today. So with that, the case just argued is submitted, and we'll move to the second case on the calendar, which is Damien Langaire v. Verizon Wireless Services. And when counsel for the appellant in that case is ready to proceed, we'll be happy to hear from you.
judges: Parker, Watford, Bumatay